Mr. Minute, Mr. Montague, you can proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, I'm Brian Montague here this morning on behalf of Appellants, Mississippi Bureau of Narcotics and its agents, Kyle Reynolds and Eric Fulton. In our briefs, Your Honors, we address several reasons why the District Court's March 31, 2014 order denying immunity should be reversed. First, subject to the Court's questions, I propose to focus this morning on four. Why the pleadings fail the test of facial plausibility under Ashcraft v. Iqbal, why they do not overcome absolute immunity under the U.S. Supreme Court's decision in Rehberg, some of the reasons why the pleadings do not overcome qualified immunity under Harris v. Payne and other cases, and lastly, Your Honors, why the Mississippi Claims Act claims that are part of this should also be dismissed through reversal and rendering. First, about facial plausibility, Your Honors. The Supreme Court, not to quote at length, but said the Supreme Court in Ashcraft v. Iqbal, determining facial plausibility is a context-specific undertaking that requires a court to draw on its judicial experience and common sense. In that light, please consider the following in this case brought, as the Court recognizes, under Section 1983 in the Mississippi Court Claims Act. The plaintiff claims that either intentionally or recklessly, he was misidentified by Agents Fulton and Reynolds as one involved in a drug transaction, November 21, 2008, at the Best Buy parking lot in Hattiesburg, also involving a drug distributor named Timothy Isom. These agents have sworn in this case, by which I mean by way of affidavit, and without contradiction, that the photograph they each attached to their affidavits, being found at the record at pages 166 and 173, is the person they saw there that day, and is the person they each separately and independently identified in a photo lineup as being the person, that person. Counsel, just looking at the allegations and whether they are sufficient, and one of the oddities perhaps in this case is exactly how do you plead plausibly that two people don't look enough alike for there to have been a honest misidentification? In paragraph 22 of the complaint, the allegation is made, upon information and belief the individual defendants knew before the Best Buy surveillance, well, that they knew that the Beaux Arts name was connected with who might be in that car. On information and belief, the person named by Isom, this guy Tillman, does not look enough like the plaintiff so that the plaintiff could be reasonably mistaken for him. You don't usually attach pictures to a complaint or otherwise deal with it. Why isn't that enough? Why isn't it a statement that two people are too different in appearance to be mistaken and to have been mistaken? It could mean all sorts of things. That would be beyond the knowledge. Either they didn't get a good look at the fellow, and once they knew Beaux Arts was the right person, maybe, they misidentified him because they knew it had to be Beaux Arts. All of that sort of speculation because the plaintiff wouldn't know. Why isn't it enough to say these two people are so different in appearance that there could not have been an honest negligent misidentification? We understand, Your Honor. We suggest to the court that the direct way to have addressed the plausibility requirement is not to say that, because keep in mind that there's nothing in the record to suggest at that time that these agents knew who Randall Tillman was, what he looked like. But the way we suggest to plausibly add facial plausibility to that element of the First Amendment complaint is to say not what Your Honor cited, but to say our client, Charles Christopher Beaux Arts, looks nothing like the person in the photographs attached to the affidavit, which at that time they had. And, of course, they couldn't say that, Judge, because we believe and suggest to the court that that photograph is a photograph of the plaintiff. Let me talk about folly, Mr. Montague. They're saying the person in the car was not their client, or Beaux Arts is saying that was not me in the car. And so once the photographs get introduced, exactly how that came about, are you saying they must explain how the officers would have picked Beaux Arts' picture out of a photo lineup? Is that part of their plausible claim? Or isn't it enough to say we don't know how we got here, but the person in the car, according to ISIM, was this guy Tillman. And when you look at Tillman and you look at my picture, Beaux Arts' picture, it's night and day. We think, Your Honor, that in the atmosphere of a case where by the time the plaintiff got around to injecting into the record paragraph 22, from which you quoted, they had had several opportunities to create plausible issues regarding whether this was in fact him. They had had their original complaint, their Rule 7a reply that they first objected to. The guilty reply was before the amended complaint? It was, Judge. And then they had had an opportunity to present competing sworn information in response to our initial motion for judgment on the pleadings or alternatively summary judgment. And, of course, they had had like opportunity after the first amended complaint in response to our second motion for dismissal. So, Your Honor, we think that the more effective way to introduce plausibility and understand Your Honor's question is to have said, look, we see this photograph that's attached to these affidavits, and this is not us. In which event the agents would have been left, we suggest having to explain why they said this. And, of course, we offered these affidavits when under Harris v. Payne we could have just recited the phrase qualified immunity and brought the challenge to the appellee, to the respondent in that context, to say here are reasons why qualified immunity does not apply. But we didn't do that because we wanted to place in the record sworn information on which a court could make an informed decision regarding these pivotal questions of immunity. Do you read their amended complaint to be a willful false accusation case or a reckless misidentification case? As between those two choices. Just those two for now. I think that I would characterize it as the latter. Reckless, yes. And I have a question in my mind having read some of these precedents, Your Honor, whether that is sufficient. For instance, in the McAllister decision, from which we quote at length in our briefs, there is language suggesting that it should be intentional or malicious, which in the environment of heightened pleadings and qualified immunity and now, of course, absolute immunity, we think is the more reasoned standard, in which case we suggest that there is, at best, a question regarding whether reckless misidentification is sufficient. And we understand, as Judge Reeves pointed out in the lower court argument on the record, that how do you determine, in keeping with what I just argued to Your Honor, malice is you can't conduct discovery and go into their thought process. Was there any suggestion that exculpatory information was suppressed or deliberately, in other words, not him? Chronologically, did they know Smooth was Tillman at the time they told the federal authorities that we saw Bosarge? The record is silent on that, I believe, Your Honor. I can recite, I can represent to the court that I know nothing that suggests that they knew that at the time. On the contrary, my appreciation of the facts are precisely as set out in the affidavits of these agents, which are part of the record on appeal. So you're saying cell phone comes back to same name, vehicle tag comes to same name, they see him and they claim and they pick him out in a photo lineup, and there's nothing in the record that suggests the photo lineup had been shown to them before or Bosarge inserted into it? Before they saw the license plate. Before they tell the feds this is Bosarge? Well, they told, they, the agents, told the U.S. Attorney's Office. Oh, is that how it worked? If I understand Your Honor's question, they told the U.S. Attorney's Office this is Charles Christopher Bosarge because A, the cell phone interception, B, the license plate tag registering this lady Mindy Ellis Bosarge, and third, we separately and independently put in a photo lineup out of several candidates. They didn't know it was Bosarge until subsequent to their picking him out of the lineup. That's correct, Judge, and the record supports that with that contradiction. And so that is what we – That's your pleadings argument. That is the pleadings argument. And you brought that first because that's stronger. I'm a little more uncomfortable with the absolute immunity notion that you can work too far back from a grand jury appearance and still immunize. You can see why I would be discomforted, and then the footnote seems to be a limiting principle that would work. I understand Your Honor's question and comment, and you refer, I believe, to footnote one in Rieberg, which takes away, one might argue, from the breadth of the main body of the Rieberg holding. Regarding that specific issue, may I comment that the Supreme Court in Rieberg, after enunciating its general holding that a grand jury witness has absolute immunity from any Section 1983 claim based on the witness's testimony, and then the court went on to assail any effort to reframe pleadings to instead attack the preparatory work, in essence, or the conversations between agents and U.S. attorneys. The court said it declines to endorse a rule of absolute immunity that is so easily frustrated. Let me ask you, what happened to Bosarge prior to the indictment? Was there any—he had to go through these detention—there were two detention hearings prior to the indictment? Your Honor, there was what I believe is referred to as an identification proceeding in Mobile before Judge Milling, and then a few days later there was a detention proceeding in Hattiesburg before Judge Parker. Was he arrested, incarcerated, jailed prior to the indictment? No. My appreciation, Judge, is that the grand jury returned the indictment against Mr. Bosarge and the 18 or so others at the same time, that on the strength of the indictment a warrant was issued and was served by the U.S. Marshals Service out of the whatever district it is in Alabama on him in the Mobile area, perhaps Irvington, Alabama, so he was not incarcerated before the grand jury indicted him. At the initial hearings in the transfer, Ray and Fulton don't testify or do, and then Thompson testifies citing them at the detention hearing? I understood the second part of Your Honor's question. Ferris Thompson did testify at the detention hearing on the basis of what he understood from them, and they did not testify. Neither Agents Fulton nor Reynolds testified at the detention hearing in Hattiesburg. But Reynolds did testify in Mobile. That's correct, Judge, and he testified that the person he saw sitting there in the courtroom across from him was the person they saw in the Best Buy parking lot. At that point, did Bosarge have counsel? He did, Judge. Did he cross-examine on the basis that you got the wrong guy, I was out in a shrimp boat? I'm meandering a little bit here because as I sit here before the court, I don't have the record, but my understanding, and I invite Mr. McCarty also to add on that subject, is that he did have counsel, the counsel did cross-examine, and we suggest, as we have in our brief, that he had other rights of due process, which of course goes to the heart of our argument, or one of many, that the only deprivations of liberty accomplished without due process amount to a 14th Amendment violation. And seeing that my time is short, Your Honors, I want to ask you, Mr. Montague, as I understand your brief and as I believe I know what's in the complaint, a plaintiff has never claimed that the photograph attached to the affidavits and the affidavits which they wove in and out of the complaint, they've never claimed that's not Bosarge. They have not claimed that, Judge, and my belief is that they would concede. Well, they don't allege that in the complaint. They do not. And I believe that probably we can look to these affidavits even on the Rule 12bC, judgment on the pleadings, because they use these affidavits so copiously throughout their complaint. We agree, Your Honor, and may I get very briefly back to Judge Higginson's point about the footnote in Reburg. We believe that the breadth of the main holding in Reburg counsels toward construing the footnote to which you referred, Judge Higginson, narrowly. We think that the Eleventh Circuit construction of the phrase fabrication of evidence, for instance, should be construed to relate only to physical evidence, and we think the Eleventh Circuit holding was affirmed in that respect. Judge Higginson, why haven't you advanced your summary judgment motion? Well, we certainly intended to, Your Honor. We thought that at that stage the way we proceed . . . When I say advanced, why haven't you latched onto that this morning? The fact that you filed a motion for summary judgment, you've had two affidavits, and they never filed a Rule 56d motion saying they needed evidence to refute it. We certainly believe, Your Honor, that under Rule 56, they should have either refuted it or made a Rule 56d specific request why it should not have been granted based on uncontradicted testimony. All right, Counsel. We thank the Court. Mr. McCarty. May it please the Court. My name is David McCarty of Jackson, Mississippi, and for two paramount reasons, Charles Bossard should be entitled to limited targeted discovery on his Section 1983 claims. Why didn't you request that in the face of a Rule 56 motion for summary judgment when they had the affidavits as their evidence? Judge Bartlett said we've requested discovery throughout this case. No, sir. Why didn't you file a Rule 56d motion saying they have filed this motion for summary judgment, we need to file our own affidavit, or we need to take some discovery? You never file that sort of motion. Judge Barksdale, after the amended complaint, which is the 67th entry on the docket of this case, we did not do that because it would have been moot. We have repeatedly sought discovery in this case, and at one point . . . It would have been moot. Your Honor, discovery had already been sought at one point, granted, and then withdrawn by the magistrate in light of rulings from the Fifth Circuit. But they had a motion for Rule 56 summary judgment pending, and I'm at a loss as to why you didn't file the elementary Rule 56d motion saying we need to take some discovery in this matter now that we are faced with this summary judgment motion. Judge Barksdale, we had already filed and was pending, it was never ruled on, a motion to strike the two affidavits as chock full of hearsay and not based on personal knowledge. Yet you used the affidavits throughout your complaint. We did use portions of the affidavits, Your Honor, in our amended complaint because the burden is on the plaintiff in these proceedings to make out a plausible claim to make it around qualified immunity, Your Honor, and there was information in those affidavits that surpassed the limited amount of information we already had. It's rather moot. It seems to me your argument really is it would have been futile because the judge had denied before. That doesn't necessarily mean you shouldn't have filed. Now, the magistrate judge had denied discovery. Yes, Your Honor. But we're dealing with a United States district judge ruling on a motion for summary judgment, and I just am at a loss as to why you didn't file the basic Rule 56D motion saying we haven't had discovery or we need to take some discovery to refute these affidavits. But it is what it is. Your Honor, it was our position throughout that we did need discovery, and that's our position today, is that discovery is warranted. We had requested it, and it had been denied. It was also our position, Your Honor, that it was improper to consider this motion as one for summary judgment at this stage in the pleadings. One of the problems with this case— I'm sorry. I missed part of that. Say that again. Your Honor, we have garbled the procedural posture of this case because the state hastens to jam evidence into the record, and the plaintiff has no way to rebut it. Instead of a normal proceeding in the Fifth Circuit where the sufficiency of the pleadings are tested under Rule 12 to see if qualified immunity is appropriate or to see if absolute immunity is appropriate, the state has chosen to jam two proceedings under Rule 12 and Rule 56 together. This makes it impossible for a plaintiff to adequately allege in their complaint, to adequately allege a series of facts that, Your Honor, we have no access to beyond the limited knowledge we had at the time we filed our complaint. Well, counsel, let's try it, though. Let's try the Rule 12 appeal arguments that you have to make. Based on what you had and the pleadings that we had to look at, which would include the Rule 7 reply, as I understand it, as well as your live complaint, why is there enough there to get past a motion to dismiss? Judge Southwood, we have alleged a plausible method of recovery. As Judge Higginson noted, there are two pathways to which these agents could theoretically be liable, both if the identification was completely false and if it were reckless. There is an allegation, Your Honor, in our complaint. Let me ask you before you move on, what is the constitutional violation you're alleging? The constitutional violation here, Your Honor, is just the same as in Hampton v. Oktibbeha County Sheriff's Department that this court ruled on in 2007. There was no probable cause that Chris Bosarge was the man these people say they saw in that Best Buy parking lot. Well, that's the dilemma because they say the photograph we selected independently is the person we saw in the parking lot. And so you have to come up with something in your complaint other than conclusory allegations to show that this was, we'll just use the term reckless, and I'm just not sure where you have something specific that it was reckless, especially since you don't deny in your complaint that the photographs attached to the affidavits are of your client. Judge Barksdale, we have the most important piece of evidence we have is very quiet, and that's that after six months of detention, the federal government ceased its prosecution of Charles Bosarge. That is the most important piece of evidence we have, Your Honor, and while very quiet, the rest of the men indicted in this series of investigations, the other 19 men, pled guilty. The 20th man, Charles Bosarge, had so little to do with this, Your Honor, that the federal government dropped the charges against him. It simply wasn't the right person. Well, but there's a difference between not simply being the right person, misidentification, and recklessly identifying him as one of the proper defendants, and that's what I want to know. What have you alleged specifically in your complaint to close that gap? Judge, it goes to what Judge Southwick asked my brother Brian Montague at the podium from paragraph 22 of our complaint, and this is the 67th document, Your Honor. At paragraph 22, we allege that these two men, and we believe the other man, Your Honor, to be Randall Tillman, that these two men do not look enough alike, that these two men do not look enough alike, that this identification could have been anything but reckless. Your Honor, unlike the macaque— That's what you're arresting your case on, what you say in paragraph 22 of your complaint. Your Honor, that is exactly what we're arresting our case on. Look through the Rule 7 reply in this, and I think you're right. But I just want to make sure what you're saying. There's nothing else you're saying in either document that would be relevant to our analysis. No, Your Honor. In McAllister v. DeSoto County, which Mr. Montague brought up, there was much more information than before the Northern District Court of Mississippi before summary judgment was granted. There was an indication that the agents had looked at police records. There was an indication that they had referred to dockets where the same name of Ms. McAllister showed up. In this case, there is absolutely no information, and we've only alleged that it was this reckless identification of Chris that started the whole tumbleweed rolling down the hill. It was only that, Your Honor. There was never, unlike McAllister, where summary judgment was granted, there was never any evidence that they referred this to a docket where his name appeared. There was never any actual connection between Chris and this Timothy Islam character. There is nothing but this— You think Chris, you're meaning Mr. Bosarge, the defendant? Yes, Your Honor. The plaintiff, the former defendant? Yes, Your Honor. He goes by Chris. I apologize. There was never anything connecting Mr. Bosarge more than this reckless identification, and that's where we have the constitutional violation. It's not enough to just simply say we think that's the person. In the 21st century, there has to be a reasonable attempt to find the right person, and that was never done here. How do you go about doing that prior to the person being arrested? Your Honor, I think you do it just like the agents in the McAllister case did. They refer to the docket. They look for matches on the names. If Mr. Bosarge had lived in Hattiesburg, Your Honor, this might be a different case. But he's from Irvington, Alabama, which is about 110 miles from the Best Buy where they allegedly saw him that day. This man simply does not match. He has nothing to do with the case. And other than the fact that he shares this last name, and in our complaint we've alleged that it was that sort of unique South Mississippi, Louisiana, South Alabama name that created a connection for the agents, nothing more than that. Well, it didn't create a connection for the agents. They independently identified him from a photograph. They were later told, and then they turned that over to the DEA or whatever, and they were later told that is Mr. Bosarge. They didn't say this is Mr. Bosarge. We're going to pick him out of a photograph. They picked the photograph, turned it over to the DEA. The DEA identified him as Bosarge, and that's what the agents were later told. Well, according, Your Honor, to information that's beyond our complaint, and that is something we have never been able to test, and exactly why targeted limited discovery upon remand would be useful. As Judge Higginson pointed out, we do not know, but we heavily suspect there is exculpatory evidence in this case. At some point, the federal prosecutors or other authorities realized, at some point in his detention, they realized this is the wrong man, and he actually has nothing to do with this. And that, again, circling back to what I raised earlier, is why you should have filed a Rule 56D motion and obtained time to do this sort of limited discovery you want now. Perhaps. And, Your Honor, again, our concern would have been any quest for more discovery had been opposed repeatedly over the years of litigation by the state. That's a first. Are you referring to the state filing a motion for summary judgment? Absolutely, Your Honor. Absolutely. So you're telling me that they opposed any discovery, and, of course, we'll find this out from all these docket entries. You're telling me that the state consistently opposed discovery even though they had a summary judgment motion pending, or did they file a summary judgment motion after they had opposed additional discovery? It was a combination motion to dismiss based on the pleadings, Your Honor, with a motion for summary judgment. That's not my question. After they filed the motion for summary judgment, did they oppose discovery? Yes. The discovery has been opposed, Your Honor, every step of the way. We have sought it in the pleadings and the docket shows on this case. We have been absolutely stymied in it. We'll find that in the docket, that they moved for summary judgment and then opposed discovery. Yes, Your Honor. You will see a limited grant of discovery from our magistrate in this case, at which time, Your Honor, we basically threw a party because we thought we were . . . Stepping back a little, can you just see if you can weave together a little bit how this landscape works in terms of absolute immunity? May I just make one statement? Yes. I want you to respond to that on rebuttal, Mr. Montague. All right? I'm sorry. I guess what I'm looking for is what's your closest best case or articulation of a rule that would not make police officers' investigative work actionable here when it's based on an honest mistake? And here, I think probably you'd accept, you have police officers investigating a sprawling drug conspiracy. They happen to get a cell that sort of tragically comes to the same first name and last name, Charles Bosarge. There looks like there's a connection between . . . And then there's a vehicle, same thing. And then they stake out the buy, the best buy, and it's their perception that the same person . . . That seems like a very unfortunate but quite honest mistake. No reasonable officer would think at that point. So what I hear you saying to us, either in your amended complaint or just here now, is, well, the difference is the federal government later dismissed him. Now, I can't understand why that rule would apply. The government will dismiss on all sorts of grounds, and it could be just Esom or whatever his name is starts to cooperate and says it wasn't him. So it's an important correction, but it doesn't work backwards. So instead, it really does, to me, come down to your view that a photo used in a lineup, picked up, has no resemblance. But that would always . . . you could always say that in any photo lineup. And that . . . so . . . I think that Your Honor has stumbled upon what is the great heartache of this case, Judge Higginson. We may . . . this court could easily grant . . . could affirm the district court's ruling, and we could proceed to limited discovery. And we very well may find out that this was an honest mistake. Our allegations, Judge Higginson, are that it was reckless or intentional. The honest reality of it is once we put these agents under deposition, once we obtain the police reports that they transferred to other state or federal officials, it might very well be that, Your Honor. But it's difficult for a variety of reasons, because if you bring in Rehberg, I think you'd agree if Fulton and Ray end up in the grand jury, and their testimony is the testimony used to indict, that's got absolute immunity. It absolutely does, Your Honor. And if they don't go in, and nothing that they communicate is given to the drug . . . federal drug investigator, that would break the causal chain. So if they go in, they get immunity. If they have no connection to the grand jury indictment, that breaks it. And that's the puzzle of Rehberg. I agree. Okay. Then the next level, I guess the factual heartbreak for me is you have a . . . your client has an attorney at a detention hearing who would say he's on a shrimp boat. And then the magistrate would, okay, let's go. So we have two federal hearings where you have a counsel in cross-examination. And does the transcript reflect he didn't even then say, I was on my shrimp boat? The theory throughout by his very capable criminal counsel, who ultimately secured his release, Judge Higginson, was that this was the wrong man. So did he cross-examine Reynolds at that first hearing saying, my guy wasn't even in the area? Yes or no? My recollection, Your Honor, is that that did not necessarily occur. There were other reasons why Mr. Bossard was detained. He did have prior arrests, Your Honor, that made him conjoined with the identification by Agent Fulton, who was the one person who testified at the grand jury. But then at the next hearing, yet again, we don't have Bossard whispering to his counsel, cross-examine Robertson or whatever the guy's name is, Thompson. Just say I wasn't even there? This was ultimately the theory that was pursued, Your Honor, but early on it did not make much of an impact. It did not make much of an impact. And the reason why this case is different is unlike McAllister from a couple years ago from DeSoto County or unlike the Hampton case in Octobock County, we do not yet have the wealth of information in those cases, Your Honor, about what actually happened. But you've got to get to plausible from conceivable. It's conceivable it wasn't the honest mistake, but the cell phone, the car, the pick out of the phone lot makes it look like they're looking at a big, wide drug conspiracy. They observe and they pick them out of a lineup. Your Honor, what's plausible here, going again to paragraph 22 of the complaint, what's plausible is that this wasn't the right man, that he was not the person there. We have alleged repeatedly he was not there in Hattiesburg that day. He was not in the car with this man. He does not look enough like Mr. Tillman to be confused. And ultimately that theory was vindicated. You can't say it was if the only basis for your saying that theory was vindicated was that charges are dismissed. In the order of dismissal, Your Honor, it does not reflect that it was dismissed. Because charges get dismissed in a sprawling conspiracy for a million different reasons. Your allegation also is that Isom potentially identified either Tillman or said it wasn't Bosarge. But the issue for us on plausibility is an identification of the person there at the Best Buy as Bosarge, reckless or intentional misidentification. We don't know what Tillman looks like. We don't know if literally it was Tillman. I'm not sure that's in the evidence that Isom fingered him, and he may not have been telling the truth. So the real issue is not that it was dismissed, as Judge Higginson said, working backwards from that. The question is, at the time, was this an intentional or reckless? If reckless is a sufficient standard, misidentification. And that depends, it seems to me, on what whoever was in that car looks like compared to what Bosarge looks like. And even from your complaint, I don't get the allegation that the officers had any basis, or there's any allegation that the officers in some way knew who Bosarge was and picked him out of this photo lineup because they were looking for Bosarge's picture. And that's what you need, it seems to me, to have a plausible case. Judge Southwick, I think the key word in the sequence there was depends. That's exactly why we do need limited targeted discovery in this case to move beyond. Both Hampton and McAllister were decided not at the motion-to-dismiss level, but after summary judgment. We very, very well may falter, Your Honor, on the shoals of more information. But the standard before this Court is simply, did we allege enough to move forward? We have alleged enough in our complaint that this was a reckless identification, and our hands have been tied throughout the process to get more information as to what exactly happened that day, who did they speak to, did they verify through fingerprints, did they do a database name check. The agents have never alleged that, and we don't have the information as to what else happened. How could they identify through fingerprints these two agents after they had simply picked out this photograph and later found out it was Bosarge since they, in effect, the DEA apparently was running the deal. Your Honor, there is no allegation that they had photographs or video or many of the things that are common in very basic surveillance opportunities. I wanted to clarify something that may have been said. As I understand it, the cell phone that was identified through this surveillance under the state court order did not belong to Chris Bosarge. It belonged to Mindy Bosarge. Mindy, whatever her name was, also known as Mindy Bosarge. Yes, Your Honor. None of the evidence. I believe it was said here that the cell phone belonged to Chris Bosarge. I just want to make sure our tape is correct on this, our recording. So it's not Chris Bosarge. That's my understanding. It's Mindy, whatever her name was, Bosarge. Judge Southwick, may I briefly respond and conclude? Well, how about answering my question? I want this clear on our recording. The cell phone that was intercepted did not belong to Chris Bosarge. Is that correct? That's absolutely correct, Your Honor. It belonged to Mindy, also known as Mindy Bosarge. That's absolutely correct, Your Honor. There is zero evidence in this case connecting Chris Bosarge, our client, to the methamphetamine ring other than the alleged identification. I apologize for not answering sooner, Judge Barksdale. My time had elapsed, and I simply wanted to request it. Well, Mr. McCarty, I'm sure you have much more to say. You have one more question, and you'll get a chance to respond to that. On that point, does the record reflect whether Mindy has any familial connection to Charles Bosarge? We've alleged in our complaint, Judge Higginson, that the Charles Bosarge, not our Chris, who's also named Charles, that Mindy Bosarge either has a father or a brother who is named Charles Bosarge. Our understanding is that she does have a family relation, which is why there was a cell phone and a license plate with this confusing name, Your Honor. All right, counsel. Thank you, Your Honor. You have your argument. First, addressing two of Judge Barksdale's questions, Judge Barksdale asked, did the appellants at the same time they were moving for summary judgment also oppose discovery? And as Mr. McCarty correctly responded, we did, and we were inspired to do so by Anderson v. Creighton, which held, and as we quote in our briefs, that, I beg your pardon, this is our fourth argument in our brief, and Anderson v. Creighton held that in qualified immunity cases, I'm paraphrasing, Your Honor, I apologize. The question should be resolved at the earliest possible stage and prior to discovery, if possible. In addition, in Harlow Fitzgerald, the Supreme Court made clear that immunity is not simply protection from liability, but for protection from suit. So we construed the tapestry of precedent to counsel us to do what we did. Well, I'm at a loss as to how the State could, on the one hand, seek summary judgment, which has an evidentiary basis, and on the other, oppose discovery. That is somewhat short of breathtaking. We understand Your Honor's concerns, and we suggest that notwithstanding that, Judge, discovery was not necessary for the plaintiff simply to say with reference to that photograph, it is me, it's not me. Of course it was. You filed a motion for summary judgment. So when you do that, you open yourself up to discovery. And we'll just have to look at it, but that's . . . Remind me, did Judge Reeves have a hearing on this? Not an evidentiary hearing. Apparently not. But did he have you come in to argue the case, ask questions on, before he granted the dismissal? I mean, before he ruled on the motion. We had a lengthy, on-the-record oral argument, March 31, 2014. And then he rules right there. It's an oral rule. He recessed for a period of time and came back in and ruled, yes, sir. May I address some other things in the brief time allotted to me on the matter of various things that were raised by counsel for the appellee? Counsel for the appellee mentions in support of their position that the government cease prosecution, and as Judge Higginson observed, there are a myriad of reasons why that may be done. In addition, we suggest that the court consider that in this case, these agents and defiants . . . If I could stop you just a second. Yes, sir. The clicking of your glasses, I bet, is being picked up by that microphone really loudly. So . . . Thank you, Judge. I'll put them down. The agents and defiants were relied on by the prosecutors in all these other cases, on all of which they worked, as sources of information supporting the indictments and, oh, by the way, convictions. And we think that's worth noting. In addition, regarding the affidavits and going to the heart of what you asked Judge Barksdale about opposing discovery on the one hand and moving for summary judgment in the alternative on the other, they had at one point moved to strike these affidavits, which were the same ones initially offered in support of our initial motion for summary judgment. They did not renew that motion, but instead, they embraced the affidavits in their First Amendment complaint. And we think that there were facts within their possession without resort to discovery that they could have injected into the summary judgment record. The comment that Mr. McCarty made at some point about there having been no reasonable attempt to do more, to fingerprint, et cetera, we would simply invite the court to consider the breadth of cases that say that negligence is not enough. We don't concede negligence, but it's not. When did Isom start cooperating? Well after the photo lineup and? That's my appreciation. My appreciation is that all of this, or at least as relates to Mr. Beausargent, emanated from the fact that his cell phone was wiretapped. And he became appreciated as the head of the methamphetamine ring, and they enlisted his cooperation. I see that my time has expired. Thank you, Your Honors. Thank you, Counsel.